**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JoAnna Ecke, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No.** |
| | ) | |
| Optum Systems, Inc., | ) | **Judge** |
| | ) | |
| *Defendant.* | ) | **Jury Trial Demanded** |

_____

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, JoAnna Ecke ("Ecke" or the "Employee"), by and through her attorneys of the law firm COLE SADKIN, LLC, and for her Complaint against Defendant, Optum Rx, Inc. ("Optum" or the "Company"), a for-profit corporation doing business in Illinois, hereby states as follows:

**INTRODUCTION**

1.      JoAnna Ecke was employed by Optum Services, Inc., from July 12, 2017 through October 30, 2018, at which point she was wrongfully discharged by Employer after taking time off for valid medical reasons.  Plaintiff seeks compensatory damages, back-pay, front-pay, and emotional damages relating therefrom.

2.      Plaintiff has met all administrative prerequisites to suit in that she filed a timely charge of discrimination against Optum Services, Inc., with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 440-2019-01102, a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 1.**  Plaintiff received a Right-to-Sue letter on or about December 19, 2018 a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 2.** Plaintiff brings this action within the limitations periods of 29 U.S.C. § 621 *et seq.*, 42 U.S.C.

§ 1981, and 42 U.S.C. § 2000 *et seq.*

## JURISDICTION AND VENUE

3.     This suit is brought to secure the protection of, and to redress the deprivation of, rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII").

4.     There is no other civil action between these parties arising out of the same transaction or occurrence as alleged herein pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

5.     Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1988, and 42 U.S.C. § 12117.

6.     Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b).

## PARTIES

7.     Plaintiff, JoAnna Ecke, is a female, a citizen of the United States, and resides in Illinois.  She was employed by Optum Services, Inc., from May 28, 2013 through October 30, 2018.  Optum subsequently backdated her termination date to December 3, 2018.

8.     Defendant, Optum, is a corporation registered to do business within the State of Illinois and is an employer within the definitions 29 U.S.C. § 630(b), and 42 U.S.C. § 2000(e)(b). At all relevant times hereto, Optum was engaged in the business of providing pharmacy services accordingly.

## STATEMENT OF FACTS

9.  Plaintiff, JoAnna Ecke, is a female, a citizen of the United States, and resides in Illinois. She was employed by Optum Services, Inc., from May 28, 2013 through October 30, 2018.

10.  On or about May 28, 2013, Ecke was hired by Catamaran, LLC (formerly SXC Health Solutions), as Senior Director for Business Intelligence and Data Warehouse. Ecke's original job duties were to govern Catamaran's data warehouse and reporting applications. Ecke's original salary was one hundred and seventy-five thousand dollars ($175,000), not including additional stock vesting options, bonuses, and various benefits.

11.  While working for Catamaran, Ecke was an exemplary employee who never received any disciplinary action. Further, Ecke was not subject to discrimination pursuant to her employment with Catamaran.

12.  On or about July 2015, Catamaran was acquired by Optum, Inc. (subsidiary of United Healthcare Group) (the "Optum Acquisition"). Pursuant to the Optum Acquisition, Ecke was requested to move to Senior Director of Clinical Products. Ecke's increased annual salary was one hundred and eighty-six thousand, five hundred dollars ($186,500), not including additional stock vesting options, bonuses, and healthcare benefits.

13.  Ecke main responsibilities, established by Optum's Chief Information Officer, Mark Halloran, were to integrate United Healthcare featured integration into the Optum software. Ecke's immediate supervisor resulting from the Optum Acquisition was Jack Haggerty.

14.  From July 2015 through April 2017, Ecke was an exemplary employee who never received any disciplinary action. Further Ecke, was not subject to discrimination during this time

period.

<u>Initial Gierek Discrimination and Harassment of Serbar</u>

15.     On or about May 2017, Barbara Gierek assumed the position of Vice President of Clinical Products.  Immediately upon Gierek's promotion to the Vice President position, she became direct supervisor to Ecke.

16.     Ecke was the primary point of contact on an hourly and daily basis with an Optum vendor called Excusia, Inc ("Excusia").  Ecke worked in direct contact with Excusia employees and immediately noticed a variety of fraud and theft on behalf of Excusia negatively affecting Optum.  Ecke attempted to engage with Excusia regarding timesheet reporting and audit compliance but was met with stonewalling and nonresponse.

17.     Ecke continually reported the Excusia fraud and theft to Optum vendor management, along with Jack Haggerty.  However, Haggerty and Optum vendor management proffered to Ecke that no discipline or punishment would be relayed regarding Excusia.

<u>Notification Regarding May 2017 FMLA Request</u>

18.     On or about May 2017, Ecke received notice from her doctor regarding sinus issues requiring immediate surgery.  Ecke immediately notified Gierek and Haggerty regarding her request to take off five (5) weeks pursuant to her doctor's instruction (the "May 2017 FMLA Request").

19.     Gierek and Haggerty approved Ecke's May 2017 FMLA Request.  During the May 2017 FMLA leave, Ecke continued to engage with Optum employees and responsibilities in order to keep her projects ongoing.

20.     On or about June 2017, Ecke returned to her position following her May 2017 FMLA Request with no substantive changes to her position in her responsibilities.

Notification Regarding January 2018 FMLA Request

21.    On or about January 27, 2018, Ecke received notice from her doctor regarding breast cancer requiring immediate surgery. Ecke immediately notified Gierek and Haggerty regarding her need to start immediate treatment (the "January 2018 FMLA Request").

22.    Gierek and Haggerty responded by responded by assisting Human Resources to provide Ecke her FMLA request paperwork on or about February 2, 2018. Gierek requested Ecke to provide a timetable for her return.

23.    From February through March 2018, while Ecke was away from the Company recuperating from her surgery, she provided a variety of email updated to Gierek and Human Resources regarding the status of her surgery, her updated FMLA leave timeline, and her ability to schedule Company obligations in the interim.

24.    Gierek did not acknowledge Ecke's correspondence or respond in any manner.

25.    On or about February 19, 2018, knowing Ecke would be undergoing highly invasive breast surgery the same day, Gierek demanded to conduct a performance review.

26.    Gierek's performance review indicated Ecke had demonstrated mediocre performance and was lacking in many areas. When Ecke asked for examples or support to substantiate Gierek's claims, Gierek could not provide any.

27.    On or about March 2018, Ecke informed Gierek and Human Resources regarding the status of her surgery and estimated timeline to return to work in July 2018. Seqwick responded by indicating that if Ecke did not provide her paperwork promptly, the Company could revoke her short-term disability and possibly terminate her employment with cause.

28.    On or about June 2018, Ecke informed Gierek and Human Resources regarding the need for additional surgery resulting from the January 2018 FMLA Request. Human

Resources reached out directly to Ecke, indicating that Ecke's job was safe and instructing her to focus solely on her recovery and wellness.

Disparate Treatment Received upon Returning to Optum

29.     On or about August 9, 2018, Ecke returned to her position and spoke with Gierek and Human Resources regarding certain accommodations that would enable her to excel (the "August 2018 Request for Accommodation"). For example, Ecke requested to be able to work from home on occasion due to her inability to drive resulting from major surgery.

30.     Human Resources responded by providing certain formed to Gierek regarding Ecke's August 2018 Request for Accommodation. Gierek did not return the requested forms back to Human Resources or sign the forms as required.

31.     From August through October 2018, Pavan Magulri (promoted by Gierek to Director of Application Development) and Gierek provided no support to Ecke to assist with either her August 2018 Request for Accommodation or general assistance required for her to complete her assignments. For example, Ecke regularly requested Pavan to participate in project meetings and one-on-one consults, but he continually failed to show up.

32.     Gierek similarly did not participate when requested by Ecke to engage in one-on-one consults or to provide general direction regarding her new position.

33.     Ecke continually reached out to Gierek and Pavan regarding her lack of assignments or inability to obtain Company training, but she was continually meant with blunt non-response.

34.     Upon returning to the Company in August 2018, all of Ecke's reporting duties were transitioned to male supervisors by Gierek.

Elimination of Job Responsibilities

35.     On or about August 18, 2018, Gierek instructed Ecke that Company policy had changed during her absence that Ecke's position no longer had any reporting authority (the "August 2018 Ecke Transition").  Gierek provided no documentation for the elimination of Ecke's job responsibilities or reporting authority.  Ecke did not feel comfortable alerting Gierek's superiors to the September 2018 Ecke Transition because Gierek was Ecke's immediate supervisor and held significant control and authority over her.

36.     On or about September 2018, Gierek informed Ecke via phone and email not to join in on clinical products project or support conference calls.  Joining and contributing to clinical products conference calls was previously a significant portion of Ecke's job responsibilities.

37.     On or about September 2018, Gierek instructed Ecke that she needed to find new training in order to obtain additional responsibilities pursuant to the September 2018 Ecke Transition.  Gierek provided no verbal or written clarification regarding either the limitation of reporting authority or the requirement for new training.  Ecke immediately utilized the Company website to search for additional training, as Gierek refused to provide any guidance regarding where said training could be investigated or administered.

38.     On or about September 2018, the Company began offering training on big data and analytics, which would enable Ecke to expand her skill set and provide additional value to the Company.  Gierek verbally rejected Ecke's request for additional training, indicating that she would not qualify.

39.     Despite requesting a new job description and duties from Gierek, Ecke was never given a new job description outline of her new responsibilities.

40.     On October 30, 2018, Gierke informed Ecke that her position had been

eliminated.

41.     No other employee from Ecke's section were terminated from that group as Gierke had informed Ecke.

<u>Mitigation of Damages and Resulting Stress</u>

42.     Due to Optum's wrongful termination, Ecke has been out of work from October 2018 through the present.[1]  Not only has Optum's actions impeded Ecke's ability to recover lost wages and provide for her family, but also this has impeded her ability to seek new employment.

43.     Ecke has applied for a variety of similarly situated positions via LinkedIn, Indeed, and in-person through friends and co-workers.  Ecke spends approximately forty (40) hours per week actively seeking employment.[2]  However, as of the date of this filing, said employment has not materialized.

44.     Ecke has applied for, and is receiving, unemployment.

45.     Ecke's health has been impacted in her ability to get back to a "normal way of life" following her traumatic surgery.  Now she is very anxious and worried about her work prospects and possibilities due to health and age.

46.     As a direct result of the stress incurred from Employer's termination, Ecke is taking prescribed medication for an ulcer caused by this stress and anxiety.  She is also seeing a therapist on a weekly basis to deal with the stress from not being able to provide for her family.[3]

47.     Ecke is currently doing her best to mitigate her damages by looking for both part-time and full-time work.

---

[1] Optum has backdated Ecke's final date from October 30, 2018 to December 3, 2018.
[2] Specifics regarding Ecke's mitigation of damages will be provided to Employer counsel promptly upon issuance of written discovery.
[3] Clarification of emotional damages will be provided to Employer counsel promptly upon issuance of written discovery.

8

**COUNT I**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF**
**1964, 42 U.S.C. § 2000e, *et seq.***

48.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

49.     Title VII provides that it is an unlawful employment practice for an employer to do either of the following [42 U.S.C. § 2000e-2(a)]: (1) Discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's gender; or (2) limit, segregate, classify employees in any way that would deprive or tend to deprive any individual of employment opportunities, or otherwise would adversely affect her status as an employee, because of the individual's gender.

50.     Plaintiff, JoAnna Ecke, is a woman.

51.     The reasons, presumed and alleged, provided by the Employer for the treatment and termination of Employee remain pretextual.  Specifically, supervisor Gierke targeted the Employee and participated in a scheme to prevent her advancement and ultimately terminate her based on her gender.

52.     Employer knowingly and intentionally discriminated against Employee on the basis of gender in violation of Title VII.

53.     The aforementioned acts and omissions of Employer constitute unlawful discrimination on the basis of Employee's gender in violation of Title VII.

54.     This discrimination was done willfully and with malicious and reckless disregard for the rights of Employee.

55.     As a direct and proximate result of the Employer's wrongful acts and omissions, Employee sustained loss of earnings and earning capacity; loss of fringe and pension benefits;

suffered mental anguish, physical and emotional distress, humiliation, and embarassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*

56.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

57.     Title VII provides that it is an unlawful employment practice for an employer to do either of the following [42 U.S.C. § 2000e-2(a)]: (1) Discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's gender; or (2) limit, segregate, classify employees in any way that would deprive or tend to deprive any individual of employment opportunities, or otherwise would adversely affect her status as an employee, because of the individual's disability.

58.     Plaintiff, JoAnna Ecke, is partially disabled because of her necessary breast cancer surgery.

59.     The reasons, presumed and alleged, provided by the Employer for the treatment and termination of Employee remain pretextual.  Specifically, supervisor Gierke targeted the Employee and participated in a scheme to prevent her advancement and ultimately terminate her based on her disability.

60.     Employer knowingly and intentionally discriminated against Employee on the basis of disability in violation of Title VII.

61.     The aforementioned acts and omissions of Employer constitute unlawful

discrimination on the basis of Employee's gender in violation of Title VII.

62.     This discrimination was done willfully and with malicious and reckless disregard for the rights of Employee.

63.     As a direct and proximate result of the Employer's wrongful acts and omissions, Employee sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress, humiliation, and embarrassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## COUNT III
## RETALIATION FOR EXERCISE OF RIGHTS UNDER TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*

64.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

65.     Title VII prohibits retaliation against any person for opposing any practice forbidden or made unlawful by Title VII or for participating in an proceeding under Title VII.

66.     Employer unlawfully retaliated against Employee for protesting and complaining about gender and disability discrimination by terminating her employment.  This retaliation was done maliciously, willfully, and with reckless disregard for the rights of Employee.

67.     As a direct and proximate result of the Employer's wrongful acts and omissions, Employee sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress, humiliation, and embarrassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT, 42 U.S.C. § 2000e,** *et seq.*

68.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

69.     Employee was subjected to unwelcome harassment based upon her gender and disability before leaving for, and returning from, necessary breast cancer surgery.

70.     This harassment created an abusive environment and affected a term, condition, or privilege of Employee's employment by causing embarrassment and anxiety, preventing her advancement, requiring her to defend false accusations, precipitating her termination, and making it difficult to perform her job.

71.     Employee perceived the working environment to be abusive and a reasonable person in Employee's circumstances would consider the working environment to be abusive.

72.     The aforementioned acts and omissions of Employer constitute an unlawful hostile work environment on the basis of Employee's race in violation of Title VII.

73.     This harassment was done willfully and with malicious and reckless disregard for the rights of Employee.

74.     As a direct and proximate result of the Employer's wrongful acts and omissions, Employee sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress, humiliation, and embarrassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**COUNT V**
**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601, *et seq.***

75.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as if fully set forth herein.

76.     Employer holds itself out as an employer covered by the Family and Medical Leave Act ("FMLA") pursuant to 29 U.S.C. § 2601, *et seq.*

77.     In August 2017, Employee was entitled to leave under FMLA after providing proper notice, pursuant to 29 CFR 825.114.

78.     Employer engaged in prohibited conduct under FMLA by interfering with, restraining, or denying Employee's rights provided under FMLA.

79.     Employer's action foreclosed Employee's rights under FMLA, including, but not limited to, the right to be returned to her position.

80.     Employer's actions were intentional, with deliberate disregard for the rights and sensibilities of Employee.

81.     As a direct and proximate result of the Employer's wrongful acts and omissions, Employee sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress, humiliation, and embarrassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

## PRAYER FOR RELIEF

As a proximate result of the foregoing facts, Plaintiff has suffered loss of past and future wages and bonuses, the value of lost past and future benefits, incidental damages, and pain and suffering in the form of emotional distress, anxiety, inconvenience, loss of enjoyment of life, loss of status and self-esteem.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Grant Plaintiff a permanent injunction enjoining Defendant Optum Services, Inc., its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request, from continuing to violate Title VII;

B. Grant Plaintiff compensatory damages, including damages for emotional distress, in an amount to be determined at trial;

C. Grant Plaintiff all lost wages, past and future, to which she is entitled;

D. Grant Plaintiff punitive damages in an amount to be determined at trial; and

E. Grant Plaintiff such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and interest.

**DEMAND FOR TRIAL BY JURY**

Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this

Complaint.


Dated: February 4, 2019                    Respectfully Submitted,

                                                      COLE SADKIN, LLC

                                                      By: /s/ Mason S. Cole

Cole Sadkin, LLC
Mason S. Cole
20 S. Clark Street, Suite 500
Chicago, IL 60603
colesadkin.com
(312) 548-8610
mcole@colesadkin.com
*Counsel for Plaintiff*